**LOU GOON HOP**

v.

**DULLES, Secretary of State.**

Civ. A. No. 680-52.

United States District Court
District of Columbia.

March 18, 1954.

Lambert O'Donnell, of Washington, D. C., for plaintiff.

Rufus E. Stetson, Jr., Asst. U. S. Atty. for the Dist. of Columbia, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action brought by the plaintiff for a declaratory judgment to declare that he is a citizen of the United States.

The plaintiff is a young man of Chinese extraction. He claims to be the son of a citizen of the United States also of Chinese extraction. It is not denied that the person who it is claimed is the plaintiff's father is a natural born citizen of the United States, having been born in this country. The Government questions, however, whether the plaintiff is actually his son, and the only issue in this case is whether the plaintiff is the son of this gentleman, who is admittedly

a natural born citizen of the United States. If this question is answered in the affirmative, then the plaintiff is also a natural born citizen of the United States by birth. If it is answered in the negative then, manifestly, the plaintiff has no claim to citizenship.

The alleged father testified that he was born in the United States and was taken back to China later, where he was married by a ceremonial marriage in the Catholic Church. He also testified that he had two sons by this marriage and that the plaintiff is the younger son.

The plaintiff testified to his birth and parentage corroborating his alleged father's testimony. A friend of the father testified that he was the best man at the father's wedding, and that several years after the marriage he saw the two children, of whom the plaintiff was one.

The facts in this case have a certain aspect of romance of the sort that occasionally occurs in these troubled times. The plaintiff's alleged father was living in the United States at the time of the attack on Pearl Harbor. He immediately offered himself for enlistment in the Marine Corps and was accepted. He spent about four or five years in the Marine Corps, part of the time serving in China. He had heard that the Japanese had taken possession of his native village and that his wife and children had been killed. He had remarried. Later while serving in China he managed to get leave for the purpose of visiting his native village, and he found his wife and two children alive. Upon returning to the United States he separated from his second wife, who thereupon obtained a divorce from him. This is one of those situations that have arisen on more than one occasion as a result of recent wars.

That the claim in this case is no mere afterthought appears from the fact that on April 15, 1936, when the plaintiff's father arrived in the United States from one of his visits to China, he answered a questionnaire of the Immigration and Naturalization Service to the effect that he had a wife and two children, giving the name of the wife, whose name he gave on the witness stand at this trial, and the names of the two children, whose names and ages coincide with the testimony given at this trial. In further corroboration of the testimony there was introduced in behalf of the plaintiff some cancelled checks showing remittances by the father to the son. The earliest of them is dated December 17, 1949.

■  The Government suggests that while there is no doubt as to the truth of the father's testimony, possibly the plaintiff was pawned off on the father as his child and is really a pretender. There is no basis for any such contention in the evidence, and the Court is not going to assume that any such fraud was attempted to be perpetrated. Proof of fraud must be clear and convincing. The impression that the Court has gained from the testimony of the witnesses in this case is that they are gentlemen of probity and credibility.

The latest case on this point was decided by the Court of Appeals for the Ninth Circuit, Mar Gong v. Brownell, 209 F.2d 448, in which Judge Pope, speaking for a unanimous bench, made some very cogent observations with which this Court is in full accord. At page 451 of 209 F.2d Judge Pope said:

"In view of the multitude of details about which inquiry was made, we doubt if any honest witness of average intelligence could survive as exhaustive an examination as this and disclose fewer discrepancies in his testimony."

I think these remarks are applicable to the very able and searching cross-examination by Government counsel in this case.

■  In the Mar Gong case the Court calls attention to the fact that while the Court must guard against imposition, nevertheless, no special quantum of proof should be exacted from any person claiming American citizenship merely because of his racial origin. In other

**810**

words, the plaintiff, of course, has the burden of proving his claim, but he has to establish it by a fair preponderance of the evidence and not beyond a reasonable doubt.

The Court in the Mar Gong case also calls attention to the fact that the Court must be careful not to be influenced by the fact that there have been frauds in other cases of a similar character, but that each case must be allowed to stand upon its own feet.

Finally, this Court is not unmindful of the statement made by the Supreme Court in Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010:

"It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

In the past, applicants such as the one before the Court had a substantial motive, perhaps, to present fraudulent claims, because the Chinese Exclusion Act barred all alien Chinese from admission to the United States, and the only manner in which a person of the Chinese race could enter was by proving citizenship of the United States. This motive no longer exists, because under the present law persons of the Chinese race are not excluded from entry. 8 U.S.C.A. § 1151 et seq. They can come in under the quota as immigrants. There is a Chinese quota, which, the Court understands, is not generally exhausted from year to year.

The Court reaches the conclusion that there is nothing that should lead it to disbelieve the cogent and convincing testimony of the plaintiff and his witnesses.

Accordingly, the Court finds that the plaintiff is a natural born citizen of the United States and is, therefore, entitled to entry into this country.

Judgment will be rendered accordingly.